60 CCPA

**TRANS–ATLANTIC COMPANY,**
Appellant,

v.

The **UNITED STATES,** Appellee.

**Customs Appeal No. 5498.**

United States Court of Customs
and Patent Appeals.

Feb. 8, 1973.

Allerton deC. Tompkins, New York City, attorney of record, for appellant.

Harlington Wood, Jr., Asst. Atty. Gen., Andrew P. Vance, Joseph I. Liebman, New York City, for the United States.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and CLARK, Justice, (Ret.), sitting by designation.

CLARK, Associate Justice.*

The issue raised on this appeal from the United States Customs Court, Third Division, involves a very simple question which is, as stated by appellant, whether or not the merchandise involved here is a hinge or a door closer. Appellant concedes that the device in question is "a kind of hinge" but claims that it "is more than a hinge"—it also closes the door and is, therefore, "a kind of door closer." The Bureau of Customs, however, classified the merchandise as hinges, and the United States Customs Court affirmed, 67 Cust.Ct. 296, C.D. 4288 (1971). We agree and affirm that judgment.

1. *Description of the Merchandise and Its Classification.*

A sample of the merchandise involved here consists of a fixed pair of single

---

* Tom C. Clark, Associate Justice of the United States Supreme Court (Ret.), sitting by special designation.

**1398**

action spring hinges, a short steel bar (pintle) for adjusting the tension of the spring and mounting screws. When the hinges are properly installed, the springs, located in the barrel of the hinge, will compress when the door is opened. When the door is released, the springs will expand and close the door. The function of the device is to hang or hold a door in place and to close the door automatically. If the spring were removed, the hinge would continue to function, but the door would have to be closed manually or by installing a door-closing device. The spring hinge provides a means of hanging and closing the door cheaply. The device was invoiced as " * * * Wrought Steel Single Action Template Spring Hinges * * *," was classified under a provision for hinges, item 647.03 of the Tariff Schedules of the United States (TSUS), as amended by the Tariff Schedules Technical Amendments Act of 1965, Pub.L. 82–241, 79 Stat. 933, and was assessed with duty at 17% ad valorem, the rate established by the Geneve (1967) Protocol to the General Agreement on Tariffs and Trade, 82 Stat. 1455, 2 Cust. Bull. 16, T.D. 68–9 (1968). Appellant asserts that the device should be classified within the ambit of item 646.95, as modified by T.D. 68–9, as a door closer and duty assessed at 10% ad valorem.

The statutes involved are:

Tariff Schedules of the United States:
*Classified under:*

Hinges; and fittings and mountings not specially provided for, suitable for furniture, doors, windows, blinds, staircases, luggage, vehicle coach work, caskets, cabinets, and similar uses: all the foregoing of base metal, whether or not coated or plated with precious metal:
Item 647.03   Other .............. 17% ad val.
*Claimed under:*

Item 646.95   Door closers and parts thereof
               of base metal ...... 10% ad val.

## 2. *Findings of the Customs Court:*

In its opinion the Customs Court noted that "Resolution of the issue requires a determination of the meaning of the *eo nomine* provision for 'hinges' as this term is used in item 647.03 of the tariff schedules."

In the absence of a special commercial designation, the language of a tariff statute is to be construed in accordance with its common meaning. A court, in determining common meaning, may rely upon its own understanding of terms used and may consult standard lexicographic and scientific authorities. United States v. Brager-Larsen, 36 CCPA 1, C.A.D. 388 (1948); United States v. John B. Stetson Co., 21 CCPA 3, T.D. 46319 (1933).

The Customs Court found that the device under consideration comported with the dictionary definitions of "hinge" and would, therefore, fall within an *eo nomine* provision for hinges. It specifically quoted four authoritative dictionaries which are so clear on the point that we need not pause for further comment.

The Customs Court further found: * * * on the record herein, and after viewing the sample of the imported merchandise, which is itself a potent witness, that the articles at bar are hinges within the ordinary understanding of that term, and that the spring is an added feature which improves their capability but does not change their basic characteristics or identity as a species of hinge within the ambit of item 647.03.

It brushed aside appellant's claims that the device had the additional capability of closing a door and, being more specifically provided for there, should come under the ambit of item 646.95, finding:

Improvement in the design of an article having an *eo nomine* classification which enables it to perform an additional function does not militate against its continuing to be a form of the named article. Under the tariff acts, articles are classifiable on the basis of their primary design, construction and function, even though

they are capable of performing other auxiliary or incidental operations.

It concluded on substantial evidence in the record that the primary function of the device is that of a hinge.

3. *The Judgment of the Customs Court Will Not be Disturbed*:

■ It has long been established that we will not disturb a finding of the Customs Court that is supported by substantial evidence. United States v. F. W. Myers & Co., 45 CCPA 48, C.A.D. 671 (1958). As noted, our examination of the record discloses that substantial evidence is present here. Not only will the device continue to work as a hinge upon the removal of the spring but, on the contrary, the device cannot work without the use of the hinge. Moreover, all hinges, the record discloses, do not have the ability to close a door nor do all door closers function as hinges. They can be entirely separate items. Since the determination of which provision of the statute is applicable is therefore not crystal clear, it is appropriate in this case to resolve the question by resorting to the primary function of the merchandise to determine classification. This clearly results in a hinge classification under item 647.03.

■ Likewise, appellant's reasoning that the device is more than a hinge washes out. Concededly, it is also more than a door closer which would, under appellant's argument, also remove it from a 646.95 classification. Appellant would, therefore, at most have only a dry run. Anyway, we think that the primary function of the imported article should govern classification. See E. Green & Son (New York) Inc. v. United States, 450 F.2d 1396, 59 CCPA ——, C. A.D. 1032 (1971); United Carr Fastener Corp. v. United States, 54 CCPA 89, C.A.D. 913 (1967).

Yet another contention of appellant is that classification should be under item 646.95 because that provision, relating as it does to door closers, is a use provision while item 647.03 is an *eo nomine*

designation for hinges. The basis of this contention is that "It is a well established principle of customs law that a classification by use will prevail over an *eo nomine* designation unless there is a clear Congressional intent to the contrary \* \* \*."

Assuming arguendo that item 646.95 is a use provision, the Customs Court, correctly we think, dealt with this contention when it said:

> The spring hinges at bar were primarily designed and constructed to function as hinges. Classification on the basis of its auxiliary function \* \* \* would be tantamount to letting the tail wag the dog.

In the light of these considerations, the judgment is therefore affirmed.

Affirmed.