(C.D. 4806)

Novo Enzyme Corporation, plaintiff *v.* United States, defendant

Court No. 76-5-01079

(Decided June 15, 1979)

*Barnes, Richardson & Colburn* (*David O. Elliott* and *Peter J. Fitch* of counsel) for the plaintiff.

*Barbara Allen Babcock,* Assistant Attorney General (*David M. Cohen,* Chief, Customs Section; *Steven P. Florsheim* and *Sidney N. Weiss,* trial attorneys), for the defendant.

FORD, Judge: This action contests the classification of a microbial enzyme preparation, described on the import invoice as "Rennilase." Rennilase is used in the curdling of milk for the manufacture of cheese. The merchandise in issue was produced in Denmark and entered at New York.

The merchandise was classified under item 437.49 of the Tariff Schedules of the United States, as modified by T.D. 68–9, as "Enzymes and ferments: * * * Other," at 5 per centum ad valorem. Plaintiff claims the proper classification is under TSUS item 437.46 which provides for "Enzymes and ferments: Rennet," free of duty. Specifically, these statutory provisions read as follows:

Tariff Schedules of the United States:

SCHEDULE 4.—CHEMICALS AND RELATED PRODUCTS

Part 3.—Drugs and Related Products

Subpart B.—Alkaloids, Antibiotics, Bar-
                     biturates, Hormones, Vita-
                     mins, and Other Drugs and
                     Related Products

\*       \*       \*       \*       \*       \*       \*

| | Enzymes and ferments: | |
|---|---|---|
| 437.46 | Rennet_____ | Free |
| | \*   \*   \*   \*   \*   \*   \* | |
| 437.49 | Other_____ | 5% ad val. |

Plaintiff contends the enzyme preparation in question is "rennet" within the meaning of that term as used in item 437.46. The term

"rennet," it is alleged, encompasses a group of enzyme preparations which coagulate milk to produce a curd suitable for making cheese and, as such, includes all enzyme preparations, whether from animal, plant or microbial sources. This is so since item 437.46 is an eo nomine provision which includes all forms of the named article. Plaintiff asserts the microbial preparation Rennilase is a form of rennet.

Alternatively, plaintiff urges that item 437.46 is a use provision, that is, a provision by which the classification of the import is determined by the use to which the import is intended. Since Rennilase is exclusively used for making cheese, plaintiff claims it to be properly classifiable as rennet.

Defendant does not dispute that the enzyme preparation in question is principally used to make cheese. While rejecting the construction of item 437.46 as a use provision, defendant agrees with plaintiff that it is an eo nomine provision. Nevertheless, defendant maintains that plaintiff's definition of "rennet" is overbroad and incorrectly encompasses microbial enzyme preparations such as Rennilase.

Defendant maintains the term "rennet" refers only to milk-clotting enzyme preparations which are derived from the fourth stomach of ruminant animals. Defendant's definition does not recognize any plant source for rennet and only selectively recognizes animal sources. Defendant contends milk-clotting enzymes derived from four-stomached animals as cows, sheep, and goats constitute rennet, but enzymes extracted from pigs' stomachs are not rennet.

The record consists of testimony of 5 witnesses called on behalf of plaintiff and receipt in evidence of 18 exhibits. Plaintiff's witnesses included a representation of persons involved, both commercially and academically, in the enzyme and cheese fields. These witnesses included a quality control director of the plaintiff's corporation, a microbiologist for a pharmaceutical company, a university professor of food science, a management and research representative of an enzyme products corporation, and a recently retired scientist who was employed by a cheesemaking company for approximately 40 years.

Mr. William McMullen, with an M.S. in chemistry, has been director of analytical and quality control laboratories for plaintiff corporation for 7 years. Novo imports and sells enzyme products. Mr. McMullen's previous 22-year employment with Pfizer Co. included chemical and quality control work in the area of enzymes.

Dr. Joseph Sardinas, with a Ph. D. in microbiology, has been employed by Pfizer, Inc.[1] for 28 years. Pfizer is a multinational, pharmaceutical company. Dr. Sardinas holds seven patents in the enzyme field, one of which is related to milk-clotting enzymes.

---

[1] It is not clear from the record whether Pfizer & Co. is a subsidiary of Pfizer, Inc., but the two corporations appear to be interrelated.

Dr. Frank V. Kosikowski, with a Ph. D. in dairy chemistry and biochemistry and microbiology, has been a professor of food science at Cornell University for 32 years. He shares eight patents, which involve microbial enzymes, bacteria removal from milk, and dairy product packaging. The witness has performed consulting services for microbial enzyme companies, government agencies, and the United Nations.

Dr. Theodore Cayle is vice president and technical director of Dairyland Food Laboratories, which manufactures milk coagulants, various rennets, and other enzyme products for the manufacture of cheese. Prior to his association with Dairyland, Cayle was director of research at Wallerstein Co., Division of Baxter Laboratories, an enzyme manufacturer. He holds a Ph. D. in plant biochemistry and microbiology.

Plaintiff's final witness, Dr. J. B. Stine, was employed by Kraft Foods from 1934 until his retirement in 1976. Until 1962, Dr. Stine's duties at Kraft involved only cheese. After that date, his responsibilities included all Kraft products. His Ph. D. is in dairy bacteriology. In the past 10 or 12 years, Dr. Stine has served as chairman of nearly every cheese committee of the Committee of Government Experts concerning the Code of Principles of Milk and Milk Products.

Testimony by the plaintiff's witnesses established that an enzyme is a protein that works as a catalyst. The enzyme accelerates a reaction without entering into the action or being used up in it. The phrase "enzyme preparation" describes the biological suspension which acts as a carrier for the enzymes. This carrier contains the active agent and usually such other substances as water, sodium chloride, preservatives, bacteria, and other enzymes. An enzyme preparation may be in what is called suspended form, which is a liquid, or it may be in dehydrated form, that is, dried.

According to plaintiff's witnesses, enzymes are sometimes grouped or classified according to their source, but ordinarily they are classified by the function they perform. All five of plaintiff's witnesses testified that because of the function microbial milk-clotting enzymes perform in cheesemaking, they considered such enzymes rennet.

Dr. Sardinas testified that rennet's chief function in cheesemaking is coagulating milk to form a stable curd. The witness explained that coagulation is the result of splitting a bond in the casein. Milk contains casein which colloides in suspension. There are three types of casein, alpha, beta, and kappa. According to Dr. Sardinas:

> * * * the integrity of this casein colloid, the unit referred to as a mycele * * * is guaranteed, as it were, by the kappa casein. The rennet enzyme can split a particular bond. The bond which joins one amino phenylalamine with another amino acid methionine bond is a labile bond. It splits it into two parts. The

consequence of this action is that the mycele, the colloid, destabilizes, and no one understands completely just why. There are at least three theories trying to explain what goes on in this complexity, but the sum total of the action is that the proteins, the alpha and beta proteins, along with some of the kappa casein, which is now called para-k-casein * * * form a curd which, of course, is insoluble.

Dr. Sardinas noted that there are other enzymes besides rennet which will coagulate milk. However, rennet is different from these enzymes since it will create a stable curd that will maintain its essential character as a curd. The unique quality of rennet for making cheese is that after it has broken the necessary bonds to coagulate milk, it for the most part stops splitting bonds. Dr. Sardinas explained that stronger milk-clotting enzymes, like papain and ficin, continue to digest further, which causes "bad flavors and poor curd consistency."

Dr. Cayle also described the milk-coagulating process in depth. He compared the casein protein to a freight train of 170 amino acids or cars, with one particular, susceptible bond or coupling between the cars/amino acids. The couplings between the cars are all the same, but each car or amino acid is itself different. The coupling or peptide bond which is going to be attacked by the milk-clotting enzyme is the same as the others, but what allows for it to be specifically split is the relationship of the different amino acids to one another. The configuration of the phenylalamine and methionine amino acids causes the enzyme to attack the bond between them at the fastest rate, breaking it, and releasing the kappa-casein portion to bind with calcium and create a stable curd. The rennet enzyme probably breaks other bonds in the amino acid chain, but at a much slower rate. Stronger milk-clotting enzymes will attack other bonds at a much faster rate. Rennet, Dr. Cayle explained, "allows for the formation of the curd by breaking that one bond and then sort of holds back and doesn't do any more damage."

Plaintiff's witnesses cited numerous animal sources of rennet, including calves, cows, lambs, kids, and goats. One witness, Dr. Stine, stated experiments are being performed to test chicken gizzards and thistles as sources of rennet. The witnesess also named three microbial sources of rennet. These microbials, identified by their Latin name, include *Mucor miehei*, *Mucor pusillus*, and *Endothia parasitica*. The Rennilase import presently under consideration is produced from the *Mucor miehei* microbial.

Dr. Sardinas testified that no microbial milk-clotting enzyme preparation worthy of sale had been discovered before 1965. Pfizer produced a milk-clotting enzyme from *Endothia parasitica* in 1967. According to Dr. Stine, microbial milk-clotting enzymes are used to produce about 40 percent of the cheese made in this country, while calf rennet is used for making only about 8 to 12 percent of the country's cheese.

The type of microbial milk-clotting enzyme under consideration is exclusively used for cheesemaking. Plaintiff's witnesses agreed that in the cheese industry, when the word "rennet," which Dr. Kosikowski said comes from a German word meaning "run together," is used by itself, it usually refers only to calf rennet. Other rennets are identified by using the name of their source in front of the word rennet, for example, bovine rennet (from adult cows), kid rennet, etc. Rennilase is the plaintiff's trade name for its enzyme preparation made from *Mucor miehei*. According to the plaintiff's witnesses, in the cheesemaking industry, Rennilase would also be described as microbial rennet or *Mucor miehei* rennet.

Dr. Cayle testified that in 1972 the Food and Drug Administration permitted the phrase "microbial rennet" to be placed on the label of the milk-clotting enzyme preparation that the Wallerstein Co. developed from *Mucor miehei*. Dr. Stine similarly testified that while he was vice president of regulatory compliance at Kraft Co., the microbial milk-clotting enzymes were simply identified as "rennet" on the ingredient clauses of Kraft products.

In response to plaintiff's case, the defendant presented 2 witnesses and 10 exhibits, including the pretrial deposition of a third witness. Appearing for the defendant were a university professor of dairy science and a representative of a corporation which manufactures and sells enzymes. Defendant's third witness is manager of regulatory compliance at a cheesemaking corporation.

Dr. Carl Anthon Ernstrom has been head of the Department of Nutrition and Food Science at Utah State University since 1971 and before that he was a professor of dairy science and head of the Department of Food Science and Industries. His Ph. D. thesis was entitled "A Study on Rennet and Rennin." He has authored 20 publications on milk-clotting enzymes and has done consulting work dealing with milk-clotting enzymes for Chris Hansen's Laboratory, Inc., the Pfizer Co., and the New Zealand Rennet Co.

Mr. Niel Dinesen is vice president of technical operations at Chris Hansen's Laboratory, Inc., which is a manufacturer and supplier of food ingredients, including milk-clotting enzymes. Mr. Dinesen, who has the Danish equivalent of a master's degree in chemistry and chemical engineering, has been employed by Hansen since 1961, doing both research and management work. He has authored five or six papers on milk clotting, and has been a member of the Ad Hoc Enzyme Technical Committee and its rennet subcommittee.

Dr. John H. Nelson, whose testimony was taken at a deposition prior to the trial, is employed by Kraft, Inc., where his responsibilities include insuring compliance of Kraft products with food and drug laws. Prior to his employment with Kraft, Dr. Nelson was associated

with Dairyland Food Laboratories, Inc., in the areas of research and management for 22 years. His Ph. D. is in dairy and food science, and he has published approximately half a dozen articles on milk-clotting enzymes.

Two of defendant's witnesses disagree with plaintiff's witnesses, and to a certain extent with each other, with regard to the definition of rennet. Both feel that plaintiff's definition of rennet is overbroad. Dr. Ernstrom presented a very restricted definition of rennet, more specific than the definition the defendant itself espouses. According to Dr. Ernstrom, the term "rennet" refers only to the enzyme preparation produced from the fourth stomach of milk-fed ruminant animals. Mr. Dinesen's definition of rennet is the same as that of the defendant, namely, enzyme preparations that come from the fourth stomach of ruminant animals and used for curdling milk to make cheese.

Defendant's third witness, Dr. Nelson, did not give a definition of rennet, nor did he consider the classification either in terms of function or ingredients. This witness did, however, testify that he formerly considered milk-curdling microbial enzymes to be rennet. Further, it appears that this change of opinion was a result of the difficulty Dr. Nelson first encountered in trying to convince the FDA to call these enzyme preparations rennet. In his testimony, this witness refers to the import in question as microbial or fungal rennet. Rather than contribute to the defendant's proof, Dr. Nelson's testimony supports the plaintiff's position.

Defendant's attempt to distinguish the microbial enzymes from animal rennet is not convincing. Microbial rennet, according to defendant, does not perform precisely the same function as animal rennet. In addition there are other nonrennet enzymes which perform the same function.

On the question of function, defendant attempts to draw three distinctions between the microbial enzyme and animal rennet. First, microbial milk-clotting enzymes are used for short-hold cheese and have not been shown to produce long-hold cheese very well. Second, the microbial enzymes do not contain rennin. Third, in curdling milk, the microbials break amino acid bonds differently from those broken by animal rennets.

Plaintiff's witnesses agree that the microbial enzymes do not produce long-hold cheese as successfully as does rennet from calves. However, as refutation of defendant's distinction, Mr. Dinesen, defendant's own witness, admitted that other animal rennets, like kid and lamb rennets, are not usually employed in making long-hold cheese either. Similarly, when asked whether kid or lamb rennet contained rennin, Mr. Dinesen testified that he did not know, but that he would still consider milk-clotting enzymes from these animals to be rennet. Nor was it established that goat and sheep rennets broke the same bonds as calf rennet did.

Defendant also contends that microbials should not be classified as rennet based upon function since defendant's witnesses testified that pepsin, also referred to as porcine pepsin, performs the same function but is not a rennet. According to defendant and plaintiff's witnesses, McMullen, Sardinas, Cayle, and Stine, pepsin is a digestive enzyme extracted from pigs' stomachs, and though used in curdling milk to make cheese it is generally not considered rennet in the cheese industry.[2]

However, although pepsin is used to curdle milk, it is not used by itself to do so. Rather it is used in combination with a rennet. Dr. Sardinas described pepsin, as it is used in cheese making, as a diluent for rennet. Defendant's witness Dr. Ernstrom testified that he also had succeeded in making cheese from 100 percent pepsin. There was no dispute between the witnesses as to the fact that cheese is seldom commercially made from 100 percent pepsin.

The parties have agreed that item 437.46 is an eo nomine provision. In customs jurisprudence the meaning of an eo nomine designation is determined as of the date of the statute. However, an eo nomine provision is intended to include all articles subsequently created which fairly come within its scope. *Sears, Roebuck and Co.* v. *United States*, 46 CCPA 79, C.A.D. 701 (1959); *Hoyt, Shepston & Sciaroni, S. Blond-heim & Co.* v. *United States*, 52 CCPA 101, C.A.D. 865 (1965). Additionally, an unqualified provision for an article includes such articles made by artificial means. *Christensen Diamond Products Co.* v. *United States*, 54 Cust. Ct. 221, C.D. 2537, 243 F. Supp. 212 (1965), *appeal dismissed*, 53 CCPA 155 (1965).

The meaning of a word in a tariff provision is determined by its common usage, unless it is shown to have a different commercial meaning. *United States* v. *C. J. Tower & Sons*, 48 CCPA 87, C.A.D. 770 (1961). In determining whether an imported article is embraced within an eo nomine designation, use may be considered in order to establish its identity. *United States* v. *Quon Quon Company*, 46 CCPA 70, C.A.D. 699 (1959).

The court may consult dictionaries, lexicons, scientific authorities, and other reliable sources of information as aids to determine the common meaning of tariff terms. *Trans-Atlantic Company* v. *United States*, 60 CCPA 100, C.A.D. 1088, 471 F. 2d 1397 (1973). Dictionary definitions support the claim that the meaning of rennet encompasses any enzyme which is used for curdling milk to create cheese, regardless of the enzyme's source. "Webster's New International Dictionary of the English Language" (2d ed. 1960), gives the following definition of rennet:

rennet, *n*. [ME., fr. *rennen* to run; cf. AS. *gerinnan* to curdles coagulate, E. dial. *run* to curdle. See RUN, *v.*] 1. The content,

---

[2] Plaintiff's witness Dr. Kosikowski did testify that he would classify pepsin as a rennet when it was used as a rennet.

of the stomach of an unweaned calf or other animal, or the lining membrane of the stomach (esp. of the fourth stomach of ruminants), used for curdling milk; hence, also, any preparation of the stomach of animals which is used for that purpose. Rennet rapidly loses its properties when heated above 60° C. Rennet extract is usually prepared from the fourth stomach of calves. 2. Anything used to curdle milk. 3. *Biochem.* Rennin.

rennin, *n.* [From rennet.] *Biochem.* An enzyme that coagulates milk. It is found in gastric juice, and also in various lower animals and plants.

Defendant attempted to establish support of its position by legislative history. Defendant's reference to the "Summaries of Trade and Tariff Information" failed to bring to light any support for defendant's interpretation. An excerpt regarding rennet in the most recent summary on this subject strongly supports plaintiff's position. This excerpt is from the 1971 summary, and thus cannot be considered in determining the legislative intent of the provisions being considered. However, the reference is relevant to a determination of the common meaning of the term "rennet" at the time the present import was entered. The relevant portion from the 1971 summary, schedule 4, volume 7, page 64, reads:

Enzymes are obtained by one of three types of processes: (1) Extraction from animal organs removed at slaughter; (2) extraction from vegetable material; and (3) cultivation of selected bacterial or fungal microorganisms. Examples of the first type of process are rennin and pepsin. *Rennin, or rennet, as the enzyme-containing substance is known commercially, is used as a coagulating agent in the manufacturing of cheese and has been obtained historically from the stomach lining of a young calf.* Pepsin, an enzyme used as a digestive aid and food additive, is obtained from the stomach of a hog. Papain, an example of the second type of process, is derived from the papaya fruit and is used as a meat tenderizer. *A second method for producing rennin, utilizing a fungal organism as an enzyme-producing agent, is an example of the third type of process.* * * * [Italic added.]

Plaintiff has satisfactorily established that Rennilase is a form of rennet, microbial rennet, which has recently been developed. Since an eo nomine provision encompasses all forms of the named item including those subsequently developed, plaintiff has met its burden of proof in overcoming the classification. The rennet prepared from microbial sources is commonly referred to as rennet. The microbials perform the same function as is readily recognized as performed by rennet, curdling milk for cheesemaking. The record establishes that microbial milk-clotting enzymes are used solely for making cheese.

Therefore, upon the evidence of record, the claim for classification under TSUS item 437.46 is sustained. Judgment will be entered accordingly.