**RMS ELECTRONICS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.D. 4818; Consolidated Court No. 75–8–02067.**

United States Customs Court.

Aug. 8, 1979.

Sharretts, Paley, Carter & Blauvelt, P. C., New York City (Peter Jay Baskin at the trial; Raymond F. Sullivan, Jr., New York City, with him, on brief), for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Attorney in Charge, Field Office for Customs Litigation, New York City (Edmund F. Schmidt, New York City, at the trial; Bruce M. Mitchell, Washington, D. C., on brief), for defendant.

FORD, Judge:

The customs authorities at the port of New York assessed duty on certain articles known as baluns, impedance matching couplers, or matching transformers at the rate of 12.5 per centum ad valorem under item 682.05, Tariff Schedules of the United States, as modified by T.D. 68–9, which provides for transformers rated at less than 1 kva.

Plaintiff, in challenging the assessment, contends the importations are dutiable at only 5 per centum ad valorem as television apparatus and parts, as provided for under item 685.20, Tariff Schedules of the United States, as modified by T.D. 68–9. Alternatively, plaintiff contends if the court finds the articles to be transformers, they are nevertheless dutiable at only 6 per centum ad valorem under the provision for "Other" as set forth in item 682.07, Tariff Schedules of the United States, as modified by T.D. 68–9.

> Generators, motors, motor-generators, convertors (rotary or static), transformers, rectifiers and rectifying apparatus, and inductors; all the foregoing which are electrical goods, and parts thereof:

| | | |
|---|---|---|
| Transformers: | | |
| 682.05 | Rated at less than 1 kva .... | 12.5% val. |
| 682.07 | Other .................. | 6% ad val. |

\* \* \*

> Radiotelegraphic and radiotelephonic transmission and reception apparatus; radiobroadcasting and television transmission and reception apparatus, and television cameras; record players, phonographs, tape recorders, dictation recording and transcribing machines, record changers, and tone arms; all of the foregoing, and any combination thereof, whether or not incorporating clocks or other timing apparatus, and parts thereof:
>> Radiotelegraphic and radiotelephonic transmission and reception apparatus, radiobroadcasting and television transmission and reception apparatus, and parts thereof:

| | | |
|---|---|---|
| 685.20 | Television apparatus, and parts thereof .......... | 5% ad val. |

General Headnotes and Rules of Interpretation

\* \* \*

10. General Interpretative Rules. For the purposes of these schedules—

\* \* \*

(i) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

The record consists of the testimony of two witnesses called on behalf of plaintiff and receipt in evidence of thirteen exhibits. Defendant offered the testimony of two witnesses and eight exhibits.

Mr. Arthur Fink, president of plaintiff corporation, identified exhibits 1–5 as the merchandise involved in this action. Mr. Fink's duties included overseeing the general operation of the company, as well as supervising imports. The witness testified the imported merchandise was used to match impedance between 300 ohm wire and 75 ohm coaxial cable, the type of cable most frequently used in home cable TV installations.

The witness testified the involved articles are described as a balun, a matching transformer, or an impedance matching coupler. The witness identified exhibits 6 and 7 as 75

ohm coaxial cable and 300 ohm wire respectively.

Plaintiff's exhibit 5, model CA–2600F, differed from exhibits 1–4 since it consisted of a balun and high-pass filter. The high-pass filter is used to eliminate CB radio interference from TV reception. Exhibits 8 and 8A are high-pass filters. Exhibit 5 according to the witness performs two separate coequal functions.

Mr. Fink testified in his opinion the articles of merchandise which his company sells were not transformers although referred to as matching transformers since devices performing the same function originally included a transformer. According to the witness who was not "a technical man," the involved articles are not transformers since they have nothing to do with electricity or power.

On cross-examination the witness testified the articles at bar were imported and sold by his company for the sole purpose of TV antenna installations, and he was not aware of any use with FM radio or ham radio.

Mr. Argyle W. Bridgett, consultant in electrical and electronics engineering was thereafter called by plaintiff. The witness testified that a transformer is a device utilizing electromagnetic induction whereby changes in current in one circuit are transformed into changes in voltage and current in another circuit. Various other definitions of the term "transformers" were read to the witness which he acknowledged are consistent with his understanding of the term. According to Mr. Bridgett the essential character of all such devices is the principle of electromagnetic induction. The witness agreed that the imported articles did in fact contain two or more sets of coils and ferrite cores. Exhibits 1–5 according to the witness are not transformers since they do not operate on the principle of electromagnetic induction. Their sole function is to match the impedance. Matching is achieved by using two lines, each made of two wires having an impedance of 150 ohms. The lines are connected in parallel

to the 75 ohm side and in series to the 300 ohm side which achieves the desired match through the method of wiring rather than electromagnetic induction. Mr. Bridgett further testified that exhibit 5 consists of a balun and a high-pass filter which perform two coequal functions. The witness testified that electromagnetic induction is an unavoidable natural phenomenon and will occur between two circuits or two wires. However, the subject articles are designed to reduce the effects of electromagnetic induction.

Defendant called Mr. Thomas Polis, director of technical service and international sales for Magnavox Systems, Incorporated. The witness testified that his company sells matching impedance transformers. A sample of the model T–26 with the case removed is received in evidence as defendant's exhibit D.* According to the witness exhibit D is used to match 75 ohms to 300 ohms and has always been called a matching transformer. Electricity is present in an antenna system in small amounts. If plaintiff's exhibits 1–5 were rated, the rating would be less than 1 kva.

Mr. Polis' testimony with respect to plaintiff's exhibit 11 (model CA–2500) was to the effect that electromagnetic induction takes place on both sides of the ferrite material. In his opinion the imported article operates as transformers and is commonly known as a transformer. In matching transformers, electromagnetic induction is a critical portion of the operation. The circuits in a matching transformer are shielded to reduce "mutual induction" since without the shielding it is possible that 75 ohm to 300 ohm impedance match would not occur. Mr. Polis had never seen matching transformers with a kva rating.

Mr. Ronald Gilgenbach, called on behalf of defendant, is a research assistant at Columbia University where he is conducting electromagnetic research for his Ph.D. in electrical engineering. He is on an educational leave of absence from Bell Telephone Laboratories. The witness testified that

* Exhibit D offered but not received in evidence at trial is hereby received in evidence.

the involved articles are operated as transformers using the principle of electromagnetic induction.

Mr. Gilgenbach testified that each article contained two transformers which are interconnected to provide a 300 ohm balance output with a 75 ohm unbalanced input. According to the witness exhibit 5 is both a balun and a filter which perform two unrelated functions. The imported articles would have a rating of less than 1 kva since the wires of the circuit would not be able to withstand 1 kilovolt ampere.

Defendant in its brief has conceded that item CA–2600F has two coequal functions, and the testimony has demonstrated said merchandise to be properly subject to duty under item 685.20, Tariff Schedules of the United States. Judgment will be issued accordingly.

The record establishes that the balance of the merchandise (exhibits 1–4) is utilized to match a 300 ohm antenna to a 75 ohm coaxial cable. The merchandise is referred to in the trade interchangeably as baluns, transformers or matching transformers. The court notes plaintiff's exhibits 2 and 3 are described on the packaging and the instruction sheets as matching transformers. Defendant's exhibit A, the "spec" sheet from plaintiff's catalogue, describes plaintiff's exhibits 2, 3 and 4 as a matching transformer or balun.

It is axiomatic in the field of customs jurisprudence that Congress is presumed to know the language of commerce and has framed tariff acts so as to classify commodities according to the general usage and denomination of the trade. *Nylos Trading Company v. United States*, 37 CCPA 71, C.A.D. 422 (1949). In the absence of a commercial designation or a contrary legislative intent, the language of a tariff statute is to be construed in accordance with its common meaning. *Trans-Atlantic Company v. United States*, 471 F.2d 1397, 60 CCPA 100, C.A.D. 1088 (1973). Neither party has adduced proof of a commercial designation which differs from the common meaning.

Common meaning is not a question of fact, but a question of law to be decided by the court. Accordingly, the testimony of witnesses is merely advisory and not binding upon the court. *United States v. National Carloading Corp. et al.*, 48 CCPA 70, C.A.D. 767 (1961). The court in determining common meaning may rely upon its own understanding of terms used and consult dictionaries and other lexicographic authorities. *Trans-Atlantic Company v. United States, supra.* The nomenclature of articles of a technical nature is not always reflected in dictionaries prepared for general use, in which case the court may consult technical sources. *C. J. Tower & Sons of Buffalo, Inc., et al. v. United States*, 69 Cust.Ct. 105, C.D. 4379, 351 F.Supp. 604 (1972), *aff'd*, 61 CCPA 74, C.A.D. 1124, 496 F.2d 1219 (1974); *E. Dillingham, Inc. v. United States*, 61 CCPA 34, C.A.D. 1114, 490 F.2d 967 (1974).

Lexicographic authorities recognize that there is more than one form of transformer. *Van Nostrand's Scientific Encyclopedia* 1873 (4th ed. 1968), describes various types of transformers under the general heading of transformer:

> *Matching Transformer.* A transformer used for impedance matching.

14 *McGraw-Hill Encyclopedia of Science and Technology* 34 (1971) recognizes that impedance matching is a function accomplished by a transformer:

> . . . In general, the transformer accomplishes one or more of the following between two circuits . . . (4) a difference in impedance level . . . . .

The foregoing definitions embrace the imported articles and the record establishes they are known, bought and sold in the trade as matching transformers or baluns and, accordingly, are transformers.

In view of the finding, it is unnecessary to discuss at length plaintiff's primary claim as television apparatus and parts. Suffice it to say that since the merchandise is specifically provided for, the application of rule 10(i) prohibits classification under said provision.

The finding by the court that the imported articles are transformers presents to the

court for determination the proper classification of the transformers. Item 682.05, *supra*, under which classification was made, utilizes the language "Rated at less than 1 kva" while the alternative claim by plaintiff under item 682.07, *supra*, is for "Other."

The term "transformer" is an *eo nomine* designation. In *United States v. Charles R. Allen, Inc., et al.*, 37 CCPA 110, C.A.D. 428 (1950), the court held that an *eo nomine* designation that is limited does not include all forms of the article, but only those embraced by the language of the provision. While the record reflects the imported articles not to be capable of handling 1 kva, they are nevertheless not embraced by the statutory language since they are not "rated." Congress is presumed not to have used useless language and, accordingly, significance must be attached to the use of the phrase "Rated at less than 1 kva." *Carey & Skinner, Inc. v. United States*, 42 CCPA 86, C.A.D. 576 (1954). The term "Other," set forth in item 682.07, *supra*, includes transformers rated at more than 1 kva or those not rated.

In view of the foregoing, the balance of the imported merchandise (models MA–730, ATR–375, CA–2500 and CA–2100) is properly subject to classification under item 682.07, *supra*, as claimed.

Judgment will be entered accordingly.