UNICOVER CORPORATION, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 80-7-01197

Before MALETZ, *Senior Judge.*

### Opinion and Order

(Dated March 30, 1983)

*Stein Shostak Shostak & O'Hara (S. Richard Shostak* on the briefs) for the plaintiff.

*J. Paul McGrath,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch *(Madeline B. Kuflik* on the briefs) for the defendant.

MALETZ, *Senior Judge:* The issue in this case—which comes before the court on cross-motions for summary judgment—is the proper tariff classification of imported First Day Covers. Such Covers are philatelic articles made up of an envelope having a cachet (i.e., an imprinted or handstamped inscription to mark special occasions); a newly issued commemorative postal stamp; and a postmark dated on the first day of sale of a newly issued postal stamp.

In particular, the imported First Day Covers are known as the "Isle of Man Silver Jubilee" Covers with each consisting of a white rectangular envelope with an elaborate engraved cachet commemorating "THE QUEEN'S SILVER JUBILEE;" two newly issued stamps; and a rubber stamped postmark imprint indicating the place of issue (the Isle of Man) and the date of issue (March 1, 1977).

The importations were assessed by the Government at the dutiable rate of 4 percent ad valorem under item 274.70 of the Tariff Schedules of the United States which covers:

> Photographs, engravings, etchings, lithographs, and wood cuts, and pictorial matter produced by relief or stencil printing process, all the foregoing, whether bound or not bound, and not specially provided for:
>
> \* \* \* \* \* \* \*
>
> Printed not over 20 years at time of importation:

\*    \*    \*    \*    \*    \*    \*

274.70      Other.................................................. 4% ad val.

As an alternative to this classification, defendant claims that the importations are classifiable as "printed paper envelopes" dutiable at 10 percent ad valorem under item 256.44 which provides:[1]

Paper envelopes:

\*    \*    \*    \*    \*    \*    \*

256.44      Bordered,    embossed,    printed, tinted, decorated, lined, or any combination thereof....................... 10% ad val.

Plaintiff challenges these classifications and claims that the importations are properly classifiable under item 274.75 which provides:

Printed matter not specially provided for:

\*    \*    \*    \*    \*    \*    \*

Other:
    Printed on paper in whole or in part by a lithographic process:
274.75          Not over 0.020 inch thick .......................... 6¢ per lb.

For the reasons that follow, it is concluded that the Government's initial and alternative classifications are incorrect and that the imported merchandise is properly classifiable under item 274.75 as claimed by plaintiff.

We turn first to the Government's classification under item 274.70. As to that classification the Government contends that because the First Day Covers were produced in part by the lithographic and engraving processes they fall within the common meaning of the terms "lithographs" and "engravings," both of which are specified as exemplars in the superior heading to item 274.70. There is a basic difficulty with this argument, however, in that an *essential* element of the First Day Cover is the rubber

---

[1] Prior to the Customs Courts Act of 1980 a counterclaim by the Government for additional duties was not permissible. Since this action was commenced prior to the effective date of that Act, the Government, though making an alternative claim for classification at a higher rate of duty than that initially assessed, is necessarily not asserting a counterclaim. *Cf.* 28 U.S.C.S. 1583 (Law. Co-op. 1977 & Supp. 1982).

134

stamped postmarked imprint which is *not* encompassed by the exemplars in the superior heading.[2]

As previously indicated, the superior heading to item 274.70 provides for "photographs, engravings, etchings, lithographs, and wood cuts, and *pictorial* matter produced by relief or stencil printing process, all of the foregoing * * * and not specially provided for." [Emphasis added.] It is true that the rubber stamped postmark imprint is produced by a relief printing process. But that imprint is basically *textual* in nature and therefore does not fall within the exemplar covering "pictorial matter produced by relief * * * printing process."

Additionally, defendant argues that while the stamped postmark imprint adds significant commercial value to the First Day Cover, it should not be taken into consideration in determining classification under item 274.70. For in defendant's view, item 274.70 is not a chief value provision but one which describes articles produced by certain processes, i.e., lithography, engraving, etching, wood cutting, etc. Thus, according to defendant, the commercial value of the postmark is irrelevant. However, the postmark imprint not only adds significant commercial value to the First Day Cover, it is, as we have seen, and essential element of the article and hence may not be disregarded in determining its classification.

Nor are the imported First Day Covers *ejusdem generis* with the kind of articles provided for in the exemplars contained in the superior heading to item 274.70. *Ejusdem generis,* as pointed out in *Stylo Matchmakers International, Inc.* v. *United States,* 73 Cust. Ct. 78, 83, C.D. 4556 (1974):

> * * * means literally "of the same kind." The imported merchandise must possess the particular characteristic which unites all of the exemplars in order to be classified in the item containing the exemplars * * *.

With this consideration in mind, the legislative history makes plain that the exemplars in the superior heading to item 274.70 have the unifying characteristic of being essentially pictorial in nature. See *Tariff Classification Study,* Schedule 2 at 144 (November 15, 1960); 1970 *Summaries of Trade and Tariff Information,* Schedule 2, Part 5 at 91. The incidental pictorial representations

---

[2] The essentiality of the postmark on the first day of issue is manifest in the following explanation, cited by the Government, in *A Key to Our History* printed by "Fleetwood—First Name in First Day Cover," Unicover Center, Cheyenne, Wyoming 82008:

**WHAT IS A FIRST DAY COVER?**

The United States regularly issues official commemorative stamps to honor the great men, significant events, and historic places important in America's history. Such stamps are first placed on sale at one officially-designated Post Office which is authorized to provide—for just *one* day—the official "First Day of Issue" postmark. This one-time postmark inalterably certifies the *first edition* of the stamp and makes the First Day Cover a much sought after collector's item. For over fifty years, knowledgeable collectors have prized these special envelopes cancelled on the precise day of issue. [Emphasis in original.]

Various dictionary definitions of First Day Covers likewise underscore the essentiality of the postmark. Thus Webster's Third *New International Dictionary,* Unabridged (1981) states:

First day cover n: a philatelic cover bearing postal markings showing that it was mailed on a first day at a first-day city and that its stamp belongs to the new issue of that first day.

Similarly *The Random House Dictionary of the English Language* (1969) provides:

First-day cover—*Philately.* A cover marked so as to indicate that it was mailed on the first day of issue of the stamp it bears and from one of the cities at which the stamp was issued on that day.

on the postage stamps hardly fall within this category. This is to say that the imported First Day Covers are not *ejusdem generis* with the kind of articles provided for by the superior headnote to item 274.70. Thus, it is concluded that the Government's classification under that item is incorrect.

We turn next to the Government's alternative claim that the imported First Day Covers are classifiable as printed paper envelopes under item 256.44 However, an examination of the sample makes it apparent that the envelope portion of the First Day Cover is incidental, subordinate and secondary to its primary function.[3] For the primary function of the imported First Day Cover is in the world of philately and not as an envelope per se.[4] In short, item 256.44 is not an appropriate provision for classification of the merchandise.

Finally, we consider plaintiff's claim for classification under item 274.75. As to that claim, it is undisputed that the importations consist of printed matter which is printed in part by a lithographic process on paper not over 0.020 inch thick. Thus the importations fall squarely within the provisions of item 274.75.

In sum, the court concludes that the imported merchandise is properly classifiable under item 274.75, as claimed by plaintiff. Accordingly, plaintiff's motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied.

---

[3] Where merchandise has a primary function and an incidental, subordinate or secondary function, it is the primary function of the imported article that governs the classification. *Trans-Atlantic Co.* v. *United States,* 60 CCPA 100, 103, C.A.D. 1088, 471 F.2d 1397 (1973). See also Sturm, *Customs Law and Administration* § 54.12 at 584 (1980).

[4] In reaching this conclusion it is to be noted that the envelope is not an essential element of the First Day Cover. Indeed, instead of an envelope, the cover portion of a First Day Cover may consist of a wrapper, a letter sheet or even a postal card. See, e.g., Webster's Third *New International Dictionary,* Unabridged (1981), which defines "cover" as:

> 3:(c)(2): an envelope, wrapper, letter sheet or postal card bearing stamp and postmark or other markings showing that it has passed through the mails * * *