MITA COPYSTAR CORP, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 90–05–00260

(Dated May 20, 1993)

*Grunfeld, Desiderio, Lebowitz & Silverman, (Steven P. Florsheim),* for plaintiff.

*Stuart M. Gerson,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, *(Barbara M. Epstein) (Stephen Berke,* U.S. Customs Service, of Counsel), for defendant.

*Neville, Peterson & Williams, (John M. Peterson* and *Peter J. Allen),* for Amicus Curiae Xerox Corporation.

## MEMORANDUM OPINION

GOLDBERG, *Judge:* This action comes before this court on (defendant's Motion for Summary Judgment and plaintiff's Cross-Motion for Summary Judgment. The court grants defendant's motion, denies plaintiff's cross-motion, and hereby dismisses the action.

## BACKGROUND

Plaintiff is the importer of toners and developers used for electro-photographic copy machines. The merchandise at issue was exported from Japan and entered the United States in March and April, 1989. The subject merchandise was classified by the United States Customs Service ("Customs") under the Harmonized Tariff Schedule of the United States ("HTSUS") subheading 3707.90.30, which encompasses "[c]hemical preparations for photographic uses." The merchandise was assessed with a duty rate of 8.5 percent *ad valorem.*

Plaintiff claims that the proper classification was HTSUS subheading 3707.90.60 which includes "[u]nmixed products for photographic uses, put up in measured portions or put up for retail sale in a form ready for use" and is dutiable at a rate of 1.5 percent *ad valorem.*

Plaintiff filed timely protests, which were denied by Customs in December 1989 and March, 1990. Plaintiff then filed a complaint before this court.

In July, 1992, defendant filed its motion for summary judgment asserting that Customs properly classified the subject merchandise, and that no genuine material issues of fact remain in dispute. Plaintiff filed a cross-motion for summary judgment, and argued that no issues of fact exist since the merchandise is appropriately classified under HTSUS subheading 3707.90.60. The Xerox Corporation submitted an Amicus Curiae brief in support of plaintiff's position.

## DISCUSSION

A. *Nature of the Merchandise:*

All parties agree regarding the underlying factual predicate of the case. The parties concede that the merchandise in question, toners and developers used in Mita Copystar photocopy machines, impart an image upon the copy produced by the photocopy machine. The parties also agree that "[e]ach of the imported toners and developers contain two or more chemical elements and/or compounds." Defendant's Brief in Support of its Motion for Summary Judgment ("Defendant's Brief") Exhibit G, Plaintiff's Response to Defendant's First Request for Admissions, at Admission Response 2 and Confidential Attachment A to Defendant's Brief.

Specifically, the subject toner is comprised of two resins[1], carbon black[2], dye, and silica and/or aluminum oxide. *See* Confidential Attachment A to Defendant's Brief. Plaintiff presented evidence which showed that in manufacturing toner, the resins, carbon black, and dye are mixed together, heated and kneaded. The molten product is extruded in a thin sheet, and cooled to a solid. The solid sheet is next pulverized into a powder, which is classified to achieve the correct particle size required for the product. Silica and/or aluminum oxide is added, which serves as a flow agent and adjusts electrical charge of the toner. *See* Plaintiff's Memorandum in Support of its Cross-Motion for Summary Judgment and In Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Brief") at 4.

Developer, on the other hand, consists of "carrier," which is a combination of metal oxides. *See* Confidential Attachment A to Defendant's Brief. Measured amounts of carrier are subjected to wet pulverization, and then dried into particles. The product is next burned, and pulverized into a powder. The powder is then classified to achieve the correct particle size, and finally a limited amount of toner is added. *See* Plaintiff's Brief at 4–5.

The evidence further demonstrated that when used in photocopying, developer is positioned in the developing unit of the copier, and toner is placed in the toner reservoir. During operation of the copier, toner automatically enters the developing unit, where it is continuously mixed with carrier to a pre-determined ratio. As toner is exhausted, the developing unit is supplied with additional toner. The carrier portion of the developer is not consumed during the process. Instead, carrier simply conveys toner to the photoreceptor, and then to the paper copy being made. Carrier remains in the developing unit, and is re-mixed with fresh toner. *See* Plaintiff's Brief at 3–5.

In the case at bar, toners and developers are constituents of a "two component" electrophotographic process. A competing process, entitled

---

[1] The evidence demonstrated that the raw material from which resin is formed is petroleum.

[2] The evidence showed that carbon black is manufactured through atomization of evaporating petroleum. Further, in place of carbon black, pigments may be utilized for blue or red colors.

a "one component" system, utilizes only a single product called a monocomponent toner. In a one component system, toner need not be mixed with developer in the photocopy machine.

Finally, the evidence showed that toners and developers are designed specifically for use in one type or brand of machine, and are not interchangeable between machines. *See* Plaintiff's Brief at 3. The individuality of toners and developers is attained in part through the nature and quantities of the ingredients used in their preparation.

### B. *Classification of the Merchandise:*

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d).

In the case at bar, the parties agree that the merchandise is properly classified only under either HTSUS subheading 3707.90.30 or 3707.90.60.

The HTSUS heading in dispute states in full:

| | |
|---|---|
| 3707 | Chemical preparations for photographic uses (other than varnishes, glues, adhesives and similar preparations); unmixed products for photographic uses, put up in measured portions or put up for retail sale in a form ready for use: |
| 3707.10.00 | Sensitized emulsions .................... |
| 3707.90 | Other: |
| 3707.90.30 | Chemical preparations for photographic uses ................................. |
| 3707.90.60 | Unmixed products for photographic uses, put up in measured portions or put up for retail sale in a form ready for use. |

The Harmonized Commodity Description and Coding System Explanatory Note (1986) ("Explanatory Note" or "Note") which is the Customs Cooperation Council's official interpretation of the Harmonized system ("HS"), states in reference to 3707.90 that:

3707.90 – **Other**

Subject to the conditions specified at (A) and (B) below, this heading covers products of a kind used directly in the production of photographic images. Such products include:

\* \* \* \* \* \* \*

(2) **Developers** to render latent photographic images visible \* \* \*.

\* \* \* \* \* \* \*

(5) **Toners** to modify the colour of the image \* \* \*.

\* \* \* \* \* \* \*

All the products cited above fall within the heading only when they are:

(A) Single substances which are:

(i) Put up in measured portions, that is uniformly divided up into the quantities in which they will be used, e.g., tablets, small envelopes put up containing the measured amount of powder for one developing bath; or

(ii) In packings for retail sale and put up with any indication that they are ready for use in photography, whether by label, literature or otherwise (e.g. instructions for use, etc.).

Single substances put up other than as above, are classified according to their nature (e.g. as chemical products in Chapter 28 or 29, as metallic powders in Section XV, etc.).

or

(B) Preparations obtained by mixing or compounding together two or more substances for photographic use. Such preparations remain within the heading whether put up in bulk or small quantities, and whether or not presented for retail sale.

Explanatory Note 37.07.

Defendant argues that based upon the Explanatory Notes, lexicographic sources, and expert witness evidence, HTSUS subheading 3707.90.60 comprises only those products which are elements or chemical compounds.[3]

Defendant asserts that products such as developers or toners are neither elements nor chemical compounds. Rather, they are chemical mixtures because "the amount of each element or compound [which comprise them] may be present in any proportion, dependent upon the desire of the person making the mixture * * * the ingredients are electively determined, and thus do not have a 'fixed ratio' to one another." Defendant's Brief at 9–10 (citations and footnotes omitted). Defendant concludes that mixtures, such as developer and toner, are classified under HTSUS subheading 3707.90.30 as chemical preparations.

Plaintiff opposes defendant's classification essentially on the grounds that Customs interpreted the applicable tariff terms too narrowly. Plaintiff contends that even if the subject merchandise is described by the "chemical preparation" subheading, it is more specifically provided for under HTSUS subheading 3707.90.60 as an "unmixed product."

Plaintiff argues that lexicographic sources hold that the common meaning of the term "unmixed products" embraces photochemicals

---

[3] Defendant defines element as: "[a] 'substance which cannot be decomposed by ordinary chemical methods into simpler substances, e.g. oxygen.'" Defendant's Brief at 9 (quoting *Concise Chemical and Technical Dictionary*) (2d ed. 1962). The court also notes that the *Concise Chemical and Technical Dictionary* 480 (4th enlarged ed. 1986) describes element as: "[m]atter, all of whose atoms are alike in having the same positive charge on the nucleus and the same number of electrons."

Defendant further defines a compound as: "'[a] substance composed of atoms or ions of two or more elements in chemical combination * * * [sic] A compound, a homogeneous entity where the elements have definite proportions by weight and are represented by a chemical formula. A compound has characteristic properties quite different from those of its constituent elements * * *'." Defendant's Brief at 9, (quoting *Hawley's Condensed Chemical Dictionary* 302 (11th ed. 1987).)

which do *"not* combine the characteristics of two or more classes or kinds, or [products which] conform[ ] to a single type."* Plaintiff's Brief at 9. Developers and toners are such unmixed products because they each are known by a distinct name and each serves a specific function. Moreover, as opposed to monocomponent toner which exemplifies a chemical preparation under the HTSUS, the subject merchandise does not combine classes or kinds of products. The subject developer and toner become a chemical preparation only after mixing during photocopying.

Plaintiff also claims that the Explanatory Notes are not definitive. It contends that the Notes are appended to the international version of the HS, which contains only subheading 3707.90, and is not further divided into subheadings 3707.90.30 and 3707.90.60. Therefore, even though Explanatory Note 3707.90 contains a two part description, it does little to illuminate the HTSUS subheadings under review.

Further, plaintiff asserts that the Explanatory Notes actually show that developers or toners are considered single substances, and hence classifiable as unmixed products. Plaintiff argues that, for example, *plaintiff* is unaware of any developers, as specified in the Explanatory Note, "put up [in small envelopes] containing the measured amount of powder for one developing bath" which contain only a single element or compound. Explanatory Note 3707.90 (A)(i). *See* Plaintiff's Brief at 15. Consequently, the HS is premised upon the tenet that all developers put up in this form are mixtures of chemicals. It is implicit, therefore, in the HS that certain developers which are in fact chemical mixtures are single substances, and accordingly unmixed products.

Finally, plaintiff claims that pursuant to other provisions of the HTSUS, the term "unmixed products" includes chemical mixtures.

The court notes at the outset that pursuant to 28 U.S.C. § 2639(a)(1) (1988), it is well settled that Customs' classification is presumed correct, and the burden of proof is upon the party challenging the classification. *Jarvis Clark Co. v. United States,* 2 Fed. Cir. (T) 70, 72, 733 F.2d 873 (1984) *reh'g denied,* 2 Fed. Cir. (T) 97, 739 F.2d 628 (1984).

The meaning of a tariff term is a question of law. *Digital Equip. Corp. v. United States,* 8 Fed. Cir. (T) 5, 6, 889 F.2d 267, 268 (1989). Moreover, when a tariff term is not defined in either the HTSUS or its legislative history, the correct meaning of a term in a tariff provision is the common meaning understood in trade or commerce. *Schott Optical Glass, Inc. v. United States,* 67 CCPA 32, 612 F.2d 1283 (1979). Finally, a court may rely upon its own understanding of terms used, and may consult standard lexicographic and scientific authorities, to determine the common meaning of a tariff term. *Trans-Atlantic Co. v. United States,* 60 CCPA 100, 471 F.2d 1397 (1973).

The court first examines the relevance of the Explanatory Notes. In doing so, the court recognizes that Explanatory Notes do not constitute controlling legislative history. *Pfaff American Sales Corp. v. United States,* 16 CIT 1073, No. 92–226 (CIT Dec. 18, 1992). Rather, their pur-

pose is to significantly clarify the reach of HTSUS subheadings, and to offer guidance in interpreting its subheadings. *Ugg Int'l, Inc. v. United States,* 17 CIT 79, 813 F. Supp. 848, 853 (1993).

The court finds that although Explanatory Note 3707.90 pertains to HTSUS 3707.90 in general, the distinction in the Explanatory Note between single substances and mixed or compounded preparations closely tracks the division in the HTSUS between 3707.90.30 and 3707.90.60. Accordingly, this portion of the Explanatory Note sheds significant light on the interpretation of HTSUS subheadings 3707.90.30 and 3707.90.60.

It is clear from the Explanatory Note that developer and toner are expressly listed as separate "products" under subheading 3707.90. Further, products qualify for classification under 3707.90 only when they are composed of either a single substance *or* a preparation obtained by mixing or compounding together two or more substances. On its face, therefore, the Explanatory Note envisioned that each "product"—be it toner, developer, or other—can be composed of a single substance *or* a mixture of substances. Accordingly, plaintiff's argument is facially inaccurate that implicit in the HS is the premise that products such as developers are classified as single substances even though they are in fact chemical mixtures.

Based on the Explanatory Notes, therefore, the court finds that under the HTSUS, developers and toners may consist of a single substance and be an unmixed product, or they may be a chemical preparation. Consequently, the court must next determine the definition of these terms.

Defendant argues that the term "single substance," and correspondingly the term "unmixed products," must be interpreted narrowly to encompass only those products composed of single chemical elements or chemical compounds. Plaintiff, on the other hand, asserts that the terms should be interpreted broadly so that merchandise which does "not combine the characteristics of two or more **classes of products**" is an unmixed product. Plaintiff's Brief at 9.

Plaintiff bases its expansive interpretation of the tariff terms upon the theory that other sections of the HTSUS modify the meaning of the tariff terms at issue. Plaintiff asserts that the Explanatory Note prefacing HS Chapter 30, Chapter Note 2(a), provides a list of "unmixed products" which expressly encompasses chemical mixtures.[4] Plaintiff

---

[4] The Explanatory Note provides in relevant part:

Chapter 30

**PHARMACEUTICAL PRODUCTS**

**Chapter Notes.**

\*          \*          \*          \*          \*          \*          \*

2. For the purposes of headings Nos. 30.03 and 30.04 and of Note 3(d) to this Chapter, the following are to be treated:

(a) As unmixed products:

(1) Unmixed products dissolved in water;

(2) All goods of Chapter 28 or 29; and

(3) Simple vegetable extracts of heading No. 13.20, merely standardised or dissolved in any solvent; \* \* \*.

claims that pursuant to *Productol Chemical Co. v. United States,* 74 Cust. Ct. 138 (1975), phrases must be given the same interpretation when the same term is used in two sections of the HTSUS. However, *Productol Chemical Co.,* 74 Cust. Ct. at 151, provides only that:

> where the same word or phrase is used in different parts of the same statute, it will be presumed, *in the absence of any clear indication of a contrary intent, to be used in the same sense throughout the statute.* (Citations omitted) (emphasis added).

The court finds that the Explanatory Notes, lexicographic and scientific resources, and evidence submitted in conjunction the parties' summary judgment motions provide a "clear indication" of the intended meaning of subheading 3707.90.30, and 3707.90.60.

The court first examines, as it may, lexicographic and scientific authorities to determine the common meaning of the tariff terms. *See Trans-Atlantic Co.,* 60 CCPA at 100.

*Webster's Third New International Dictionary* Unabridged 2504 (1986) describes "unmixed" as meaning: "not mixed : unadulterated, pure * * *." *The Random House College Dictionary* 856 (revised ed. 1988) defines "mixed" Composed of or containing different kinds of persons, materials, elements, etc." *The Oxford English Dictionary* Vol. IX 916 (2d ed. 1989) explains "mixed" as: "2.a. Mingled or blended together; formed by the mingling of different *substances,* individuals, etc." (Emphasis added.)

The term "substance" is defined by *Hawley's Condensed Chemical Dictionary* 1102 (11th ed. 1987) as: "Any chemical element or compound. All substances are characterized by a unique and identical constitution and are thus homogeneous." *Webster's Third New International Dictionary* Unabridged 2279 (1986) described "substance" as: "4. * * * c: matter of definite or known chemical composition : an identifiable chemical element, compound, or mixture—sometimes restricted to compounds and elements * * *."

The court notes that Explanatory Note 3707.90 limits its description to *single* substances. Consequently, the court finds that the common meaning of the term "single substance" as provided in the Explanatory Notes is matter composed of an identifiable chemical element or compound. Further, based upon the Explanatory Notes and available lexicographic and scientific resources, the court determines that products properly classifiable under HTSUS subheading 3707.90.60 as "unmixed products" are only those composed of an element or a chemical compound.

The court also examines the meaning of the tariff term "chemical preparation" in HTSUS subheading 3707.90.30. Standard lexicographic authorities provide a general definition of the term "chemical preparation." *Webster's Third New International Dictionary* Unabridged 1790 (1986) defines "preparation" as "5 : something that is prepared : something made, equipped, or compounded for a specific purpose * * *." *Funk & Wagnalls New Standard Dictionary of the English*

*Language* 1957 (1942) defines the term as: "4. [s]omething made or prepared, especially a compound, concoction, or composition; as, medicinal or chemical *preparations*."

Explanatory Note 3707.90(B) provides that products are classifiable as a chemical preparation when they are "preparations obtained by mixing or compounding together two or more **substances** for photographic use." (Emphasis added.) Thomas Governo, a New York Branch Chief of the Chemical Branch of Customs, testified in an affidavit submitted with Defendant's Brief that "[m]y understanding of the term 'chemical preparation' is that a preparation is a mixture of two or more elements or compounds compounded specifically for an end use." Thomas Governo affidavit submitted with Defendant's Brief at 2, paragraph 9.

Based on the evidence before the court, the court finds that products which are combinations of two or more elements or chemical compounds are chemical preparations, and are correctly classified under HTSUS subheading 3707.90.30.

In the case at bar, uncontradicted evidence shows that the subject merchandise is not composed of only an element or of a chemical compound. *See* Defendant's Brief Exhibit G, Plaintiff's Response to Defendant's First Request for Admissions, at Admission Response 2. Instead, the evidence demonstrates that the subject toners and developers are combinations of elements and chemical compounds, and are therefore chemical preparations. *See Id.*

Finally, the court finds that because the evidence shows that the definitions of the tariff terms "unmixed products" and "chemical preparations" are mutually exclusive, both provisions do not describe the same merchandise. Consequently, the court need not address plaintiff's argument that even if the subject merchandise is described by the "chemical preparation" subheading, it is more specifically provided for under HTSUS subheading 3707.90.60 as an "unmixed product." Plaintiff had contended that, pursuant to HTSUS General Rule of Interpretation 3(a), when two provisions control the same product, the more specific description—in this case, subheading 3707.90.60—prevails. However, in order for HTSUS General Rule of Interpretation 3(a) to apply, the merchandise must be clearly and equally described by two competing provisions, which is not the case at bar. *E.M. Chemicals v. United States,* 9 Fed. Cir. (T) 33, 920 F.2d 910 (1990).

Accordingly, the court concludes that no genuine issues of fact remain, and that the subject toners and developers are properly classified as chemical preparations under HTSUS subheading 3707.90.30.

CONCLUSION

For the reasons provided above, this court holds that no genuine issues of fact regarding the classification of the subject merchandise remain in this action. Accordingly, defendant's motion for summary judgment is granted, plaintiff's cross-motion for summary judgment is denied, and the action is dismissed.